ELLEN E. COSMAN *vs.* FRANCIS P. DONOVAN & others.

Suffolk.    December 6, 1932. — February 23, 1933.

Present: RUGG, C.J., CROSBY, PIERCE, FIELD, & LUMMUS, JJ.

*Agency,* Existence of relation. *Landlord and Tenant,* Gas appliances.

At the trial of an action of tort by one of the tenants in a six-family tene-
ment house owned by the defendant, for personal injuries caused by
an explosion of gas which had collected in a gas stove in the plaintiff's
tenement due to a temporary turning off of the gas at a meter without
notice or warning to the plaintiff, the plaintiff called the defendant
as a witness and he and a second tenant, afterwards called by the de-
fendant, in the course of their testimony stated in substance that he
had authorized such tenant to employ some one to change the gas
stove in the second tenant's apartment and that he would pay for it.
A daughter of the second tenant, called by the defendant, testified that
only one change of gas stoves was made in her mother's apartment
and that such change was made on the occasion of the accident to the
plaintiff.    There was other testimony of the defendant and of the
second tenant to the effect that the authority which he gave for a
change of stoves was on an occasion previous to the time when the
plaintiff was injured and that the defendant knew nothing about the
change in the course of which the plaintiff was injured and gave no
authority concerning it.    It appeared that the negligence causing the
injury was of a person whom the second tenant procured to make
the change in stoves and that he turned off the gas at the plaintiff's
meter instead of turning it off at the second tenant's meter, and then
turned it on again at the plaintiff's meter without notice to her.    A
verdict was ordered for the defendant.    The plaintiff alleged excep-
tions.    *Held,* that
    (1) It was the duty of the jury to find the facts by weighing all the
testimony; and it was within their province to accept that part of the
testimony of the defendant and of his witnesses which was favorable
to the plaintiff and to reject all thereof that was unfavorable;
    (2) The jury were entitled to believe the testimony of the de-
fendant and one of his witnesses that he had authorized the second
tenant to employ someone to change the stove, and to disbelieve their
testimony that such authorized change was made on an occasion
previous to the plaintiff's injury;
    (3) It was not necessary for the plaintiff to show that the person
whose negligence caused the plaintiff's injury was in the general em-
ployment of the defendant or that he was under any special engage-
ment of service to him or entitled to receive compensation from him
directly; it was enough that at the time of the accident he was in

charge of the defendant's property by his authority, engaged in his business, and, in respect to that property and business, under his control;

(4) A verdict should not have been ordered for the defendant.

TORT.  Writ dated October 29, 1928.

In the Superior Court, the action was tried before *Donnelly*, J.  Material evidence is described in the opinion. Of the witnesses, whose testimony there is described, the plaintiff, one of the defendants, and Palmer were called by the plaintiff; and Mrs. Holden and Catherine C. Holden were called by the defendants.

The judge ordered a verdict for the defendants.  The plaintiff alleged exceptions.

*C. S. Walkup, Jr., (J. B. Sly* with him,) for the plaintiff.

*A. S. Allen, (W. J. Noonan* with him,) for the defendants.

CROSBY, J.  This is an action of tort to recover for personal injuries received as the result of an explosion in a gas stove in an apartment occupied by the plaintiff as a tenant and owned by the defendants.  The plaintiff alleged that the injuries, which included a miscarriage, were due to negligence of the defendants.  The case was tried before a jury.  At the close of the evidence the judge directed a verdict for the defendants on the ground that the evidence would not warrant a finding of agency.

There was evidence that the defendants, three brothers, were the owners of a six-family apartment house on Boylston Street in Boston.  There were three apartments on each side of the house.  The plaintiff lived on the third floor. A Mrs. Holden lived in a first floor apartment.  The defendant Bernard L. Donovan looked after the property, collected the rents and did whatever was necessary about the premises.  The plaintiff testified that on Saturday morning, May 5, 1928, she lighted the gas in the stove for the purpose of baking beans; that the beans had been baking all day; that between five and five-thirty o'clock in the afternoon she was lying down and her daughter told her there was something the matter with the gas; that it had been lighted and it went out; that the plaintiff thereupon went to the gas stove in the kitchen and had her son

look in the oven to see if the gas was out there; that she did not notice any smell of escaping gas; that upon being told that it was out she got down on her knees in front of the stove and struck a match to light it; that a blue flame came out with a rumbling noise throwing her back and burning her hair; that after the accident she called downstairs and one Palmer and others came up to her apartment; that she inquired why the gas had been turned off without her being warned; that Palmer told her he did not mean to hurt her.

Mrs. Holden who occupied an apartment on the first floor testified in substance as follows: In December, 1927, she had a gas stove in her kitchen that was leaking. She told Donovan that there was a gas stove in the cellar, and she said, "I wish you could put it in for me instead of this one," and he replied, "If you know a good gas fitter, have it put up and I will have it taken out of the rent." She got a licensed gas fitter by the name of Francis Murphy to do the work in December, 1927. Donovan allowed her $5 on the rent and she paid Murphy. This gas stove was too large for the place, and in May, 1928, she obtained a gas stove which was on the piazza of one of the other tenements and asked Palmer, who was one of her boarders, to put it up for her; she knew he could do the work because he had done that kind of work. She had no talk with any of the Donovans with reference to Palmer doing work on this gas stove, and Donovan did not know anything about it. Palmer lighted the gas in her stove and went down cellar, and he told her to tell him when the gas went out; he called up, "Is it out?" and she said, "No, it must be Cosman's meter"; he then turned the gas off again and the gas in her stove went out; Palmer then came up stairs and in two or three minutes Mrs. Cosman came downstairs and asked, "Are you meddling with my gas?" This witness replied, "We turned off the wrong gas, but he turned it on right away . . . ."

The defendant Bernard L. Donovan testified that in December, 1927, Mrs. Holden asked for permission to change her gas stove; that in December, 1927, "or when-

ever it was" he gave her permission to change gas stoves
and allowed her $5 out of the rent for fixing it; that he
bought and gave her the gas stove in 1927; that he did
not know where she got the gas stove in 1928, he gave no
authority to connect any stove in 1928, the change he
authorized had nothing to do with the change in stoves
in Mrs. Holden's place in 1928; that in December, 1927,
Mrs. Holden employed a gas fitter named Murphy to put
in a stove and the witness personally did nothing about it,
but he paid for and authorized it; that he did not within
two weeks of the time of the accident state to the plaintiff
and other persons that he had authorized Mrs. Holden to
change the stove from the second floor into her apartment,
or that he would allow Mrs. Holden $5 to pay to somebody to
make the change; "that he did this in 1927."

Robert T. Palmer, called by the plaintiff, testified that
he was a car shifter for the Boston Elevated Railway; that
it was he who on May 5, 1928, turned off the gas; that he
was going to change gas stoves on the first floor; that he
did not give Mrs. Cosman or any one in her apartment any
notice he was going to turn off the meter because he did
not intend to shut off her meter; and that he shut it off
because he did not know which was her meter.

Catherine C. Holden, called by the defendant, testified
that she was eighteen years old, the daughter of Mrs.
Holden, and lived with her mother on the first floor; that
she saw Palmer working on the gas stove; that Mrs. Cos-
man came down and said that when she lighted the gas
stove it blew up in her face; that her mother and Palmer
then went up to Mrs. Cosman's apartment. She further
testified on her direct examination that before that day
there had been no change in her mother's gas stove. On
cross-examination she testified there was only one change
of gas stoves in her mother's apartment and that was on
the day of the accident, and that she had no recollection
of any change in gas stoves in December, 1927, or any
month in 1928 until May of that year. There was other
testimony not material to the question raised.

The issue before us for decision is whether from the en-

tire evidence the jury would have been warranted in returning a verdict for the plaintiff. The answer to that question depends upon whether there was any evidence from which the jury would have been warranted in finding that the defendants were answerable for the acts of Palmer.

"To constitute an agency . . . there must be employment, or authority given, or some confirmation of acts already done, by the party to be charged as principal. The mere consent or permission that another person may, for the convenience or accommodation of one who employs him, do certain acts which the principal has a right, or is even upon request bound, to do himself, is not sufficient." *Flint* v. *Gloucester Gas Light Co.* 3 Allen, 343, 347. The present case falls within the first part of the rule stated. If the jury believed the testimony of the defendants' witness Mrs. Holden, that there were two changes of gas stoves, the second unknown to the defendants, it is clear that the plaintiff would not be entitled to recover against these defendants. But the jury were not bound to believe this testimony; they could have disbelieved it in its entirety even if it had been uncontradicted. *Lindenbaum* v. *New York, New Haven & Hartford Railroad*, 197 Mass. 314, 323. *Gordon* v. *Bedard*, 265 Mass. 408, 411. *Gilchrist* v. *Boston Elevated Railway*, 272 Mass. 346, 350. *Wilson* v. *Grace*, 273 Mass. 146, 152. But this testimony was contradicted in important particulars. It is the duty of the jury to find the facts by weighing all the testimony. They are not required to accept as true or reject the whole or any part of the testimony of either party, but may credit such portions as they deem worthy of credence. *Klayman* v. *Silberstein*, 252 Mass. 275, 278. The jury could believe that part of the testimony of the defendant Donovan, and that of Mrs. Holden, to the effect that Donovan authorized her to employ some one to change the gas stove and Donovan paid for it, and disbelieve the part to the effect that there was a change made of the stoves in December, 1927; and they could believe the testimony of Catherine C. Holden that the change was made by Palmer in May,

1928, and that no change was made before that time. *Guinan* v. *Famous Players-Lasky Corp.* 267 Mass. 501, 518, 519. The defendant Donovan testified that the stove he bought for Mrs. Holden in 1927 was a new stove but he could not remember how much he paid for it, or where he bought it; that he kept accounts of his management of the property but had no bill or memorandum or anything showing that a stove was bought in December, 1927, for use in Mrs. Holden's apartment. Palmer testified that the range which he took out in May, 1928, was an old range "two or three years old." Donovan produced at the trial a loose leaf book on one of the pages of which was the item "Feb. 4, Mrs. Holden. Paid plumber for setting gas stove, $5," but the jury could have disregarded this evidence. Donovan was unable to state where Murphy, who the defendants alleged changed the stoves in December, 1927, was located. When asked about it he said, "Mrs. Holden will tell you about that." Later recalled he testified that since the previous day he had made no effort to find out who the man was that put in the stove in 1927. Mrs. Holden testified "the lawyers asked her for his name and address and she gave them this information," but she had not seen Murphy in court; that she did not know his address, but his name was Francis Murphy; that the last she knew of him he was in Roxbury on Washington Street between Egleston Square and Dudley Street; that she knew he had moved two or three times because she saw his sisters and they told her so. She further testified that the reason she requested a change of stoves in December, 1927, was because her old stove was leaking a little bit; that the reason she wanted the change made in May, 1928, was because the stove was too large for the place. Palmer who took the range out in May, 1928, testified that she told him that the reason she wanted the range changed was because the old one was leaking.

The jury would have been warranted in finding upon the entire evidence that the defendants authorized Mrs. Holden to employ some one to change the gas stove in her apartment; that pursuant to that authority she secured

the services of Palmer, who testified that he was a car shifter. For failure on his part to perform the work with reasonable skill and care the defendants are responsible. *Buldra* v. *Henin*, 212 Mass. 275. Palmer, who was called by the plaintiff, testified that he had no talk with the defendants about doing the work; that they had not paid him anything for the work, but that he did it to oblige Mrs. Holden. This evidence, if believed, does not affect the rights of the plaintiff. It is not necessary for the plaintiff to show that he was in the general employment of the defendants or that he should be under any special engagement of service to them or entitled to receive compensation from them directly. It is enough that at the time of the accident he was in charge of the defendants' property by their authority, engaged in their business, and, in respect to that property and business, under their control. *Kimball* v. *Cushman*, 103 Mass. 194, 197, 198. It is not contended by the defendants that Palmer was an independent contractor. See *Khoury* v. *Edison Electric Illuminating Co.* 265 Mass. 236, 238, 239; *Mintz* v. *White*, 269 Mass. 218, 221. There was no contract with Mrs. Holden such as would exclude the defendants from control of and responsibility for the acts of Palmer in the service upon which he was engaged. It follows that a verdict could not rightly have been directed for the defendants.

*Exceptions sustained.*